**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRENTON PUBLIC SCHOOL DISTRICT BOARD OF EDUCATION, <br><br> Plaintiff, <br><br> v. <br><br> A.C. on behalf of K.C. and FOUNDATION ACADEMY CHARTER SCHOOL, <br><br> Defendants. | Civil Action No. 23-20295 (GC) (DEA) <br><br> **MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

      **THIS MATTER** comes before the Court upon Plaintiff Trenton Public School District Board of Education's ("BOE") "Application for Emergency Relief and Motion for Declaratory Judgment." (ECF Nos. 3 & 4.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's application is **GRANTED**, and the August 9, 2023 Order on Emergent Relief from the Administrative Law Judge is **VACATED** and **REVERSED**. The Court finds that student K.C.'s "stay put" school/pendent placement is Foundation Academy Charter School, pending an administrative determination as to Plaintiff's "due process" petition that objects to the June 13, 2023 Individual Education Program that would allow K.C. to be privately placed at Honor Ridge Academy.

I.     **BACKGROUND**

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and specifically under its "stay put" provision, 20 U.S.C. § 1415(j).  The dispute centers on where K.C., a seven-year-old child with autism and other disabilities, will attend school while the Trenton BOE challenges the proposed placement of K.C. at the private Honor Ridge Academy.[1]  The parties are before this Court on an interlocutory appeal from the August 9, 2023 "stay put" placement decision in an ongoing administrative process pending in the New Jersey Office of Administrative Law.

The facts are well known to the parties and thoroughly described in the papers docketed on this appeal.  Therefore, the Court provides only the essential description of the procedural history and factual background.

A.   FACTUAL BACKGROUND

The Trenton BOE is a local educational agency that operates a public school district within Mercer County, New Jersey, and receives federal funds in connection with its obligations to educate students with disabilities pursuant to the IDEA.  (ECF No. 1 ¶ 1.[2])  K.C. is a seven-year-old child whose family lives in Trenton.  K.C. attended kindergarten and first grade at Foundation Academy during the 2021-2022 and 2022-2023 school years, respectively.  (*Id.* ¶¶ 2-3.) Foundation Academy is a public charter school within the Trenton BOE's district.  (*Id.* ¶¶ 4-5.)

In or around September 2022, K.C. was referred for a child study team evaluation.  (*Id.* ¶¶ 8-9.)  The evaluation was conducted between September and December 2022, and it resulted in a

---

[1]      A.C., the father of K.C., is defending this matter on K.C.'s behalf.

[2]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

January 30, 2023 Individualized Education Program[3] ("IEP") that found that K.C. is eligible under the classification category of "multiply disabled" for autism and other health impairments. (*Id.* ¶¶ 10-12.) The IEP set out special education services recommended for K.C. during the first and second grades and had an end date of January 30, 2024. (ECF No. 1-4 at 21-46.)

Despite the IEP, K.C. struggled during first grade at Foundation Academy, exhibiting "[s]elf-harm, sensory issues . . . and head banging." (*Id.* at 97 ¶ 20.) K.C.'s mother attests that Foundation Academy sent K.C. "home almost 3-4 times per week." (*Id.*) As a result, K.C.'s "parents began searching for an appropriate program and school." (*Id.* at 98 ¶ 21.)

On June 13, 2023, after K.C. was accepted at Honor Ridge Academy in Clark, New Jersey, an approved private school for students with disabilities, Foundation Academy proposed an amended IEP that would allow K.C. to be placed at Honor Ridge. (ECF No. 1 ¶¶ 15-16; ECF No. 1-4 at 98 ¶ 22.) On June 14, K.C.'s parents signed and consented to the amended IEP. (ECF No. 1 ¶ 17; ECF No. 1-4 at 127.) That same day, Foundation Academy's Director of Special Services shared the signed IEP with the BOE. (ECF No. 1 ¶ 18.) The IEP anticipated that K.C. would begin an extended school year at Honor Ridge starting in July 2023. (*Id.* ¶ 19.)

On June 26, 2023, the BOE filed a "due process" petition[4] challenging K.C.'s placement at Honor Ridge. (*Id.* ¶ 21.) The BOE's position is that "the proposed private placement would not constitute the least restrictive environment for K.C. and that K.C.'s educational needs could be

---

[3]    School districts provide a "free appropriate public education" to disabled children "by designing and administering a program of individualized instruction that is set forth in an Individualized Education Plan . . . . The IEP 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009) (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004)).

[4]    In New Jersey, when there is a dispute over a child's placement, "the parents and the school board first undergo mediation, and if mediation is unsuccessful, a 'due process hearing' is held before a state administrative law judge." *Shore Reg'l High*, 381 F.3d at 198 (citation omitted).

met at a program and placement within Trenton's Public Schools." (ECF No. 1-4 at 135.)

Notwithstanding the due process petition, K.C. started at Honor Ridge on July 7, 2023,[5] and K.C.'s parents filed an Application for Emergent Relief with the Office of Administrative Law, asking that it find that K.C. is entitled to remain at Honor Ridge until the BOE's due process challenge is decided.[6] (ECF No. 1 ¶ 29.) The BOE opposed on July 11, and oral argument was heard by the Administrative Law Judge ("ALJ") on July 12. (*Id.* ¶¶ 30-31.)

On July 13, 2023, the ALJ issued a written decision and Order that found that K.C.'s "stay put" institution was Foundation Academy while the BOE's legal challenge to the June 13, 2023 IEP proceeds. (*Id.* ¶ 31.) The ALJ wrote that the BOE's June 26, 2023 petition for due process "explicitly put[]" K.C.'s parents and Foundation Academy "on notice that stay-put was invoked at the then-current educational placement of student K.C. . . . which was at Foundation [Academy as] set forth by student K.C.'s then-effective IEP which maintained him at Foundation." (ECF No. 1-4 at 208.) Any other result, wrote the ALJ, would "deprive Trenton BOE of its legal right to challenge the proposed private placement for this seven-year-old." (*Id.*)

On July 26, 2023, K.C.'s parents filed a renewed Application for Emergent Relief, which effectively asked the ALJ to reconsider his July 13, 2023 Order and to find that K.C.'s "stay put" institution is Honor Ridge, not Foundation Academy. (ECF No. 1 ¶ 32.) The BOE opposed on August 4, 2023. (*Id.* ¶ 33.)

On August 9, 2023, the ALJ issued a written decision and Order that departed from his earlier decision and found that K.C.'s stay-put institution is Honor Ridge. (*Id.* ¶ 35.) The ALJ

---

[5]     K.C. stopped attending Honor Ridge on July 14, 2023, when Honor Ridge learned that the BOE would not accept fiscal responsibility for his placement there. (ECF No. 1-4 at 168.)

[6]     Before the BOE filed its petition, K.C.'s parents had filed an application for emergent relief seeking a "stay put" determination, but that application was withdrawn without prejudice on June 26, 2023. (ECF No. 1-4 at 170.)

ordered that K.C. "continue education at Honor Ridge including transportation until the outcome of any Due Process Petition." (*Id.*) The ALJ emphasized that Foundation Academy had stated that it did not "offer a program that is appropriate for student K.C.'s needs," and this was of "concern" because the ALJ would "not permit a child to be lost in litigation while a nebulous due process is decided." (ECF No. 3-2 at 4, 6-7.) As a result, the ALJ found that "the only logical placement for this student is to remain . . . at Honor Ridge until the conclusion of . . . [the] due process filed in this case." (*Id.* at 12.)

### B. PROCEDURAL HISTORY

On September 12, 2023, Plaintiff BOE filed a Verified Complaint Seeking Interlocutory Appeal challenging the ALJ's August 9, 2023 Stay-Put Order.[7] (ECF No. 1.) The BOE then filed an Application for Emergency Relief and Motion for a Declaratory Judgment. (ECF Nos. 4 & 5.) The Court entered a Text Order on September 12 directing Defendants K.C. and Foundation Academy to file their opposition to the BOE's motion by September 15. (ECF No. 6.) Defendants timely opposed on September 15, and the BOE replied on September 18. (ECF Nos. 10, 12, 13.)

On September 20, 2023, counsel for K.C. sent the Court correspondence stating that the BOE had refused to comply with the ALJ's August 9, 2023 Order or a subsequent Enforcement Order from the New Jersey Department of Education and that K.C. has been at home without education. (ECF No. 16.) The BOE replied that same day and seemingly tried to proffer argument as to why those lawful orders had not been complied with by the BOE. (ECF No. 17.)

---

[7]     K.C. previously appealed a July 13, 2023 Order of the ALJ to the District of New Jersey, but that appeal was dismissed on September 7, 2023, when it was rendered moot by the August 9, 2023 Stay-Put Order. (Civ. No. 23-04052, ECF No. 17.)

II.   **IDEA'S "STAY PUT" FRAMEWORK**

The IDEA "requires participating states to provide disabled children with a free and appropriate education." *Gloucester Twp. Bd. of Educ. v. E.N. on Behalf of A.N.*, Civ. No. 21-939, 2022 WL 1104848, at *1 (D.N.J. Apr. 13, 2022) (citing 20 U.S.C. § 1412(a)(1)(A)). "The premise of the IDEA is that parents and schools working together to design an IEP is the ideal way to reach the statute's goal of a [free and appropriate education] for every child." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 117 (3d Cir. 2014). In order to accomplish this goal, the Act "establishes an elaborate procedural mechanism to protect the rights of those children." *Red Bank Bd. of Educ. v. J.Z.*, Civ. No. 15-5268, 2015 WL 4773392, at *2 (D.N.J. Aug. 13, 2015).

"Congress anticipated . . . that 'the collaborative process' may at times break down," and if it does break down, "the Act allows [a] party to respond to a stalemate in the discussions by requesting an impartial due process hearing before a state or local administrative officer." *M.R.*, 744 F.3d at 117 (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012)). During the pendency of this administrative process, the Act's "'stay put' rule[] applies." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 863-64 (3d Cir. 1996) (citation omitted). Section 1415(j) states, in relevant part:

> [D]uring the pendency of any proceedings . . . , unless the State or local educational agency and the parents otherwise agree, the child *shall* remain in the *then-current educational placement* of the child . . . .
>
> [20 U.S.C. § 1415(j) (emphases added).]

"This provision . . . serves 'in essence, as an automatic preliminary injunction,' reflecting Congress's conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved." *M.R.*, 744 F.3d at 118 (quoting *Drinker*, 78 F.3d at 864); *see also Y.B. on behalf of S.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196,

199-200 (3d Cir. 2021) ("[T]he Supreme Court explained that 'stay-put's' expansive text is limited by the IDEA's purpose—to 'strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school.'" (quoting *Honig v. Doe*, 484 U.S. 305, 323 (1988))); *Davis on behalf of Davis v. D.C.*, 2023 WL 5209559, at \*6 (D.C. Cir. Aug. 15, 2023) ("Section 1415(j) is only a shield to temporarily block the District from fundamentally changing a student's educational placement; it is not a 'sword to effectuate affirmative remedies.'").

To determine a student's "then-current educational placement" for purposes of the stay-put rule, the United States Court of Appeals for the Third Circuit has directed district courts to "look[] to the IEP '*actually functioning* when the 'stay put' is invoked.'" *M.R.*, 744 F.3d at 118 (emphasis added) (quoting *Drinker*, 78 F.3d at 867); *see also S.K. ex rel. N.K. v. Parsippany-Troy Hills Bd. of Educ.*, Civ. No. 07-4631, 2008 WL 4561512, at \*14 (D.N.J. Oct. 9, 2008) ("In other words, it is generally the placement associated with the child's most recent IEP."). "The operative placement could be either a public school or a private school that the local district was financing to satisfy the requirement that every child be given a *free,* appropriate education." *M.R.*, 744 F.3d at 118; *see also Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 12 (1993) ("Congress intended that IDEA's promise of a 'free appropriate public education' for disabled children would normally be met by an IEP's provision for education in the regular public schools or in private schools chosen jointly by school officials and parents.").

"Once a court ascertains the student's current educational placement, the movants are entitled to an order [maintaining that placement] without satisfaction of the usual prerequisites to injunctive relief." *M.R.*, 744 F.3d at 118 (quoting *Drinker*, 78 F.3d at 864).

## III.   <u>SUBJECT MATTER JURISDICTION</u>

District courts "have federal question jurisdiction pursuant to 28 U.S.C. § 1331 for claims under the IDEA," but this jurisdiction is normally "subject to the requirement that administrative

remedies have been exhausted." *Gloucester Twp. Bd.*, 2022 WL 1104848, at *1; *see also Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) ("In the normal case, exhausting the IDEA's administrative process is required in order for the statute to 'grant[] subject matter jurisdiction to the district court.'" (quoting *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994))). Nevertheless, federal courts have "accept[ed] jurisdiction of stay put disputes, and the [Third Circuit] Court of Appeals has expressed no concern about the jurisdictional basis." *Cinnaminson Twp. Bd. of Educ. v. K.L.*, Civ. No. 16-3586, 2016 WL 4212121, at *3 (D.N.J. Aug. 9, 2016) (Bumb, C.J.) (quoting *R.S. v. Somerville Bd. of Educ.*, Civ. No. 10-4215, 2011 WL 32521, at *7 (D.N.J. Jan. 5, 2011)); *see also E.O. v. Teaneck Bd. of Educ.*, Civ. No. 20-4803, 2020 WL 4559083, at *3 (D.N.J. Aug. 7, 2020) ("[W]eight of authority supports . . . argument that exhaustion is unnecessary" when challenging "stay put" order.). Accordingly, this Court can exercise jurisdiction over the BOE's challenge to the ALJ's August 9, 2023 Stay-Put Order notwithstanding that administrative proceedings remain ongoing.

## IV.   **STANDARD OF REVIEW**

When reviewing a challenge to an administrative decision in an IDEA case, the district court generally applies a modified version of *de novo* review, and the court is required to give due weight to the factual findings of the ALJ. *See Q.T. on behalf of H.P.-B. v. Pottsgrove Sch. Dist.*, 70 F.4th 663, 666 (3d Cir. 2023) (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009)). "'Factual findings from the administrative proceedings are to be considered *prima facie* correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'" *Id.* When the challenge is to an ALJ's determination of a student's "current educational placement," however, courts exercise plenary review as to this question of law. *See Drinker*, 78 F.3d at 865 ("Our review of this legal issue is plenary.").

8

## V.   **DISCUSSION**

### A. INJUNCTIVE RELIEF

Even though the dispute comes before the Court upon the BOE's application for injunctive relief, the Court's stay-put analysis is not subject to the traditional four-part test for a preliminary injunction under Rule 65, because the Court finds that the BOE is entitled to an "automatic injunction" under the IDEA's "stay put" provision. *See Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ.*, 10 F.4th 215, 221 n.4 (3d Cir. 2021) ("Because we conclude that Hatikvah is entitled to an automatic injunction, we do not reach whether Hatikvah is entitled to a 'traditional' preliminary injunction."); *see also Drinker*, 78 F.3d at 864 (The IDEA "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." (quoting *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982))). Indeed, when ruling on stay-put disputes, courts do not regularly analyze all of the factors considered for a "traditional" preliminary injunction. *See, e.g., J.E. ex rel. J.E. v. Boyertown Area Sch. Dist.*, 452 F. App'x 172, 177 (3d Cir. 2011) ("[N]o analysis of the factors a court typically considers in awarding injunctive relief was required."); *B.A.W. v. E. Orange Bd. of Educ.*, Civ. No. 10-4039 JLL, 2010 WL 3522096, at *4 (D.N.J. Aug. 31, 2010) (Linares, C.J.) ("Given its function as an 'automatic preliminary injunction,' . . . the Court need not apply the standard test for a preliminary injunction pursuant to [Rule] 65."). And in IDEA cases, "the preliminary injunction and final injunction hearings are combined pursuant to Rule 65(a)(2) . . . for purposes of determining . . . whether the ALJ's decision of . . . the 'then-current educational placement' under . . . the IDEA should be affirmed or reversed." *K.L. v. Berlin Borough Bd. of Educ.*, Civ. No. 13-4215, 2013 WL 4039023, at *3 (D.N.J. Aug. 7, 2013) (Simandle, C.J.).

### B. K.C.'s "STAY PUT" PLACEMENT

The first argument advanced by the BOE as to why the ALJ's August 9, 2023 Order, which found that K.C.'s "stay put" institution is Honor Ridge, should be reversed is that the ALJ did not have the authority to reconsider his July 13, 2023 Order that had found that K.C.'s "stay put" institution was Foundation Academy. (ECF No. 4 at 13-14.) In other words, the BOE argues that, even if presented with new facts or arguments and even if the ALJ believed his prior order to be in error, the ALJ was bound by his own stay-put order, an interlocutory order, during the ongoing administrative proceedings.

The Court need not dwell on this argument, because the BOE cites no case law or other authority for the proposition that an ALJ cannot reconsider his or her own stay-put order during an ongoing administrative proceeding. The BOE asks this Court simply to infer from the statutory scheme, which allows parties to seek interlocutory appeal of an ALJ's stay-put order, that an appeal is the only recourse for ALJ error and, absent appeal, the ALJ is forever bound by his order. (*Id.*) The Court will not so infer absent supporting authority.

The BOE's second argument, and the crux of this controversy, is that the ALJ's August 9, 2023 Order erred as a matter of law because Foundation Academy, not Honor Ridge, is the "then-current educational placement" of K.C. for purposes of the IDEA's "stay put" rule. (ECF No. 4 at 14-21.) The Court agrees.

The facts of this case are analogous to those in *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 384 F. App'x 58 (3d Cir. 2010). In *Bayonne Bd. of Educ.*, a thirteen-year-old student with learning disabilities was attending a public charter school in Hoboken, New Jersey, and the charter school's child study team concluded that the student would be better served by being placed at a private school for the 2009-2010 school year. 384 F. App'x at 59. The student's parents agreed to the

private school placement in the proposed June 9, 2009 IEP, "with the . . . placement beginning in September 2009." *Id.* at 59-60.

In July 2009, the Bayonne School District objected to the private school placement and initiated a due process hearing, "claiming that an in-district school placement would provide [the student] with a free and appropriate public education in the least restrictive environment among non-disabled children." *Id.* at 60. The student's parents "cross-petitioned . . . for a 'stay-put' order placing [the student] at the [private school] during the pendency of the administrative proceedings." *Id.* Both the parents and the charter school argued that the student's "stay put" institution was the private school because "the only valid, functioning IEP in place at the time the dispute arose was the June 9, 2009 IEP." *Id.* at 61.

On appeal, a panel of the Third Circuit Court of Appeals wrote that determining the "then-current educational placement" at the time the dispute began was "complicated" by the fact that the prior school year had ended in June 2009 and the disabled student "was not actively receiving instruction under either the most recent un-challenged IEP for the just completed 2008-2009 school year, or the disputed upcoming June 9, 2009 IEP." *Id.* ("Indeed, the June 9, 2009 IEP had not been implemented in any true sense. The June 9, 2009 IEP called for [the student's] placement at the [private school] to begin in September 2009."). Acknowledging that "[n]either the plain language of the IDEA, New Jersey laws implementing the IDEA, nor . . . prior case law expressly cover[ed] the situation presented," the Court ultimately held, in an unreported decision, that the charter school, not the private school, was the "stay put" institution because "if an IEP were considered 'implemented' as soon as it was signed by the student's parent, the school district's right to object in advance would be illusory." *Id.* at 62. The Court reasoned that

> having [the] student remain at [the charter school] while the dispute
> with regard to his placement is resolved hues closest to the plain
> meaning of the statutes as well as the congressional intent of

> maintaining the status quo, inasmuch as [the student] never attended the [private school] and never received instruction under the June 9, 2009 IEP. Placing him at the [private school] at this stage would not be consistent with the purpose of the stay-put provision to maintain the status quo until the conclusion of the due process hearings, during which [the student's] ultimate appropriate placement will be determined.
>
> . . . .
>
> . . . [The charter school and student's parents] cannot dictate placement of [the student] at the [private school] over [the school district's] objections. IDEA's stay-put provision should be read in harmony with N.J. Stat. Ann. § 18A:36A–11(b), which permits a school district to object to a placement before a child is moved, especially given the IDEA's goal of cooperative federalism.

[*Id.* at 62-63.]

Other courts reviewing stay-put orders in IDEA cases have similarly recognized that "it would be strange if a statutory provision intended to maintain the status quo during administrative proceedings was instead interpreted and applied to require placement of a student into a brand new educational environment . . . and implementation of a never-before-effectuated IEP while those proceedings are still ongoing." *Gross-Lee on behalf of D.A.-G. v. D.C.*, 2022 WL 3572457, at *14 (D.D.C. July 20, 2022) (collecting cases); *see also Berlin Borough Bd. of Educ.*, 2013 WL 4039023, at *7 ("Since no agreement was reached between the parties with regard to placement at Orchard, or for the implementation of an IEP at Orchard, Orchard cannot now be considered R.L.'s 'then-current educational placement.'").

Here, K.C. attended Foundation Academy Charter School during the 2021-2022 and 2022-2023 school years, and the Trenton BOE objected to the private school placement proposed in the June 13, 2023 IEP before the program had been "implemented in any true sense." 384 F. App'x at 61. Notably, when the BOE filed its June 26, 2023 due process petition objecting to the June 13, 2023 IEP, K.C. had not yet attended Honor Ridge Academy and the IEP anticipated K.C.'s

attendance to begin the following month in July 2023.  Accordingly, Foundation Academy was the "then-current educational placement" of K.C., and the IDEA's "stay put" provision states that K.C. must remain there during the pendency of the administrative proceedings related to the BOE's due process petition.  *See* 20 U.S.C. § 1415(j); *Bayonne Bd. of Educ.*, 384 F. App'x at 62-63 (The charter school and student's parents "cannot dictate placement of [the student] at the [private school] over [the school district's] objections.").

K.C.'s parents and Foundation Academy both ask this Court to rely on the Third Circuit's recent, reported opinion in *Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ.*, for the proposition that a school district can be required to pay for private school placement as the "stay put" institution during the pendency of administrative proceedings, and to extrapolate from that proposition that the Trenton BOE in this case should be required to pay for K.C.'s placement at Honor Ridge as the "stay put" school.  (ECF Nos. 10 at 2-3 & 12 at 9-13.)

While Defendants are correct that the Third Circuit held in that case that a school district may be required to pay for private school placement during the pendency of administrative proceedings, there is one critical difference between the facts of *Hatikvah* and the facts in this case. In *Hatikvah*, "the parties agreed that the" private school was the "pendent placement for purposes of the IDEA," and the remaining dispute concerned "only whether [the charter school] or East Brunswick should bear the cost of [the student's] pendent placement."  10 F.4th at 218; *see id.* at 220 ("[B]ecause [the student] was already a student at the [private school] when the stay-put rule was invoked — points that the parties do not dispute — the stay-put rule protects [the student's] pendent placement at the [private school].").  Under those factual circumstances, the Court of Appeals held that "it is 'well established' that the resident school district must fund a student's private placement if it is the educational setting the student's current IEP prescribes . . . , even in cases where the charter school created and implemented the student's IEP."  *Id.* at 219-20 (quoting

*M.R.*, 744 F.3d at 119).

Here, in contrast to *Hatikvah*, the Trenton BOE does not agree that Honor Ridge is K.C.'s pendent placement/"stay put" school.  And in accordance with the decision in *Bayonne Bd. of Educ.*, the Court finds that K.C.'s pendent placement at this time is Foundation Academy Charter School, not Honor Ridge, because the BOE objected to the June 13, 2023 IEP before it was implemented and before K.C. started school at Honor Ridge.[8]

## C. Irreparable Harm

Even if the Court were inclined to look beyond the IDEA's "stay put" provision and consider whether there are grounds to circumvent the administrative process due to potential "irreparable harm" to K.C. from the pendent placement at Foundation Academy, it would not find that there is a basis for such a ruling on the present record.

As a preliminary matter, both the United States Supreme Court and the Third Circuit Court of Appeals have held that the IDEA's "stay put" rule is "unequivocal," and a child must remain at their "then-current educational placement" pending a decision on the due process petition.  *See Drinker*, 78 F.3d at 864 ("'The Supreme Court has described the language of section 1415(e)(3) as 'unequivocal,' in that it states plainly that 'the child *shall* remain in the then current educational placement.'" (quoting *Honig*, 484 U.S. at 306)).

In addition to that statutory direction, the Third Circuit has also indicated that the irreparable harm exception to the administrative process should be "sparingly invoked," particularly in IDEA cases, because the administrative "process offers an opportunity for state and local agencies to exercise discretion and expertise in fields in which they have substantial experience.  These proceedings thus carry out congressional intent and provide a means to develop

---

[8]       In *Hatikvah*, the Third Circuit acknowledged that the facts in the case before it were "distinguishable and non-analogous" to the facts in *Bayonne Bd. of Educ.*  10 F.4th at 220 n.2.

a complete factual record." *Komninos*, 13 F.3d at 779. Courts have thus declined to find irreparable harm when the claim is supported only by allegations of regression without concrete evidence, typically in the form of affidavits from competent professionals, of "serious and irreversible mental or physical damage." *Id.*; *see also Old Bridge Bd. of Educ. v. R.D. ex rel. D.D.*, Civ. No. 15-3886, 2015 WL 4464152, at *5 (D.N.J. July 21, 2015) ("Plaintiff's unsupported contention is speculative at best. D.D. is entitled to a free and appropriate public education, and the May 19 Order is only an interim order pending a final resolution on the merits. . . . Therefore, Plaintiff has not carried its burden in establishing that exhaustion would work a severe or irreparable harm . . . ."); *L.V. ex rel. G.V. v. Montgomery Twp. Sch. Dist. Bd. of Educ.*, Civ. No. 13-2595, 2013 WL 2455967, at *5 (D.N.J. June 5, 2013) ("The Third Circuit has made clear that in order to avoid the administrative process, the alleged harm must be irreparable; mere regression is not sufficient.").

Here, Foundation Academy has asserted that "it is unable to meet this student's unique needs," and K.C.'s parents have asserted that K.C. is regressing and will continue to regress as a result of the BOE's refusal to recognize the propriety of the placement at Honor Ridge. (ECF Nos. 10 at 4 & 16.) There is no record evidence, however, that would enable the Court to find that K.C. would be irreparably harmed by continuing as a student at Foundation Academy during the pendency of the administrative process.[9] K.C. has been a student at Foundation Academy for two years. If K.C. remains in the current placement and it is ultimately found that K.C. has been deprived of a free and appropriate public education, K.C. may seek redress under the IDEA. *See, e.g., Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 249 (3d Cir. 2009) ("In the event that a

---

[9]     The Court accepts Foundation Academy's representations at face value, but if a charter school could force the placement of a disabled student at a private school at the cost of the district simply by asserting that the charter school could no longer meet the student's needs, it might unduly incentive charter schools to readily do so.

15

student has been denied a FAPE, a court may award compensatory education to account for the period the student was deprived of this right.  This remedy is designed to require 'school districts to 'belatedly pay expenses that [they] should have paid all along.'"  (quoting *M.C. on Behalf of J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 395 (3d Cir. 1996))).  "The availability of such remedies belies [the] argument that" K.C. "will suffer irreparable harm if not immediately placed" at Honor Ridge.  *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, Civ. No. 09-4422 SRC, 2009 WL 2998153, at *6 (D.N.J. Sept. 15, 2009).

## VI.   CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiff's application (ECF Nos. 3 & 4) is **GRANTED**, and the August 9, 2023 Order on Emergent Relief from the Administrative Law Judge is **VACATED** and **REVERSED**.  An appropriate Order follows.

Dated:  September 27, 2023

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**